USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-2095 NEW HAMPSHIRE MOTOR TRANSPORT ASSOCIATION, ET AL., Plaintiffs, Appellants, v. TOWN OF PLAISTOW, Defendant, Appellee. ____________________ Before Cyr, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ORDER ON PETITION FOR REHEARING Entered October 25, 1995 On petition for rehearing, New Hampshire Motor Transport Association has expanded its reliance on an agency regulation touched upon lightly at one point in the original brief. This regulation of the Department of Transportation states that access review processes adopted by the state shall provide inter alia _____ ____ for "denial of access to terminals . . . only on the basis of safety and engineering analysis of the access route." 23 C.F.R. 658.19 (i)(2)(A). It is apparently the Association's position that this provision represents a controlling agency interpretation of the "reasonable access" provision of the Surface Transportation Systems Act of 1982 to which deference is required under the Chevron doctrine. We reject this belated _______ suggestion. First, the ordinance and order in this case do not "deny . . . access to the terminal"; they impose reasonable restrictions upon it, as the statute itself clearly permits. This is no more an outright denial of access than a detour around ______ a school zone or a bridge raised for maritime commerce during rush hour. Nor does the regulation itself even purport to define "reasonable access" as that term is used in the statute; the quoted provision is one element in a check list of elements for state review processes to be established under the regulations. Indeed, if the regulation were read as the Association intends, there would be a very serious question about its validity. As explained in the panel opinion, the original 1982 statute did not even arguably impose the requirement that all reasonable restrictions on access be based solely on safety; and whatever the precise purpose of the 1984 amendment that emphasized that safety regulations could be imposed on certain tractor-trailers, a drastic recasting of the original "reasonable access" provision is nowhere suggested. Even under Chevron, _______ deference to an administrative interpretation is not unlimited. Second, the implications of the suggested reading of the regulation, like the suggested reading of the statute, weigh heavily against it. There is no federal regime of zoning or use restrictions that applies to terminals, like the one in this case, located miles from the interstate highway system. Thus, the Association's reading of the statute and the regulation would mean that no one--neither the federal government, nor the states and localities--would have the power to carry on this traditional function of government. It would be remarkable enough for Congress to determine to transfer such authority sub silentio from the states and local ____________ governments to federal authorities or for it to empower the Department of Transportation to make such a shift by regulation. What is to us almost inconceivable is that Congress effectively abolished anyone's authority to impose reasonable non-safety ______ based restrictions on access to such terminals. The notion that trucking terminals have been completely exempted from regulation that affects every other kind of business in the United States is difficult to take seriously. The petition for rehearing is denied. ______